UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**KEVIN JAMES BELZER** and
**CASSIE LEE BELZER**,

Debtors.

Case No. **12-61590-13**

# MEMORANDUM of DECISION

At Butte in said District this 19th day of March, 2013.

In this Chapter 13 bankruptcy, the Debtors and the Trustee entered into a Stipulation that was filed with the Court, and approved, on December 3, 2012. Pursuant to the Stipulation, the Trustee agreed to withdraw his bad faith objection to confirmation based on § 1325(a)(3), and the parties further agreed that confirmation of Debtors' Chapter 13 Plan dated October 24, 2012, involved no disputed issues of fact. Given the absence of any disputed issues of fact, the parties agreed to submit confirmation of Debtors' Plan to the Court on stipulated facts and simultaneous briefs. The parties filed "Stipulated Facts," and simultaneous briefs on January 8, 2013. The matter is now ready for decision.

STIPULATED FACTS

1. The Debtors filed a petition under Chapter 13 of the Bankruptcy Code on September 30, 2012.

2. On October 30, 2012, the Debtors filed their Completed Schedules and Statements.

3. The Debtors' Employee Income Records were filed at Docket # 16.

1

4. The Debtors' Form 22C was filed Docket #13.

5. The Debtors' Schedules were filed at Docket # 12 (Schedules I & J, which are pertinent to the instant briefing, are found at pages 20-22 therein).

6. The Debtors' Plan was filed at Docket #11.

7. Prior to filing their Chapter 13 petition, the Debtors experienced a known change in their income. Debtor Cassie Belzer began a new job on August 6, 2012. Her hourly rate increased from $31.60 to $38.32, which amounts to an additional $537.60 per biweekly pay period, or $1,164.80 per month.

8. The Debtors' form 22C calculated their current monthly income according to § 101(10A) of the bankruptcy code using their income received in March through August of 2012. This period only included one pay period in which Cassie was earning $38.32 per hour.

9. According to their form 22C, the Debtors are below median earners.

10. Had Cassie been employed at her new position for the entire CMI calculation period, the Debtors would have been above median.

11. The Debtors disclosed their increased income on their Schedule I, which shows Cassie's monthly gross income at $6,640.83.

12. After deducting their reasonable, current expenditures going forward, the Debtors have a monthly net income of $190.24.

13. The Debtors Plan proposes to pay $330.00 per month over 36 Months. The Debtors' Form 22C was filed Docket #13.

## CONTENTION of the PARTIES

The Trustee's objection to confirmation of Debtors' Plan is two-fold. First, the Trustee

argues that based upon the known change in Cassie's projected disposable income, "it does not appear that the Debtors are committing 100% of their projected disposable income to fund the Plan as required for confirmation by 11 U.S.C. § 1325(b)." The Trustee contends that if Debtors use Cassie's new wage in calculating projected disposable income, Debtors will be above-median and thus, Debtors' disposable income should be determined by Part III of Form B 22C. Second, the Trustee argues based upon such calculation, "Debtors' Plan should extend for the sixty-month applicable commitment period." Debtors agree that their projected disposable income must account for Cassie's increased pay, but counter that based upon their average monthly income received in the six-month period preceding their bankruptcy filing, their income is below-median and thus, the applicable commitment period is 36 months.

APPLICABLE LAW and DISCUSSION

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met. *In re Byrn,* 410 B.R. 642, 645 (Bankr. D.Mont. 2008); *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995). Section § 1325(b)(1)(B) provides that,

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> \* \* \* \*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> The Ninth Circuit explained: "If a trustee or holder of an allowed unsecured claim

3

objects to the confirmation of a plan that does not propose to pay unsecured claims in full, the court may confirm the plan only if the plan provides that all of the debtor's 'projected disposable income' received during the 'applicable commitment period' is applied to make payments under the plan. 11 U.S.C. § 1325(b)(1)." *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th Cir. 2008).

While the term "projected disposable income" is not defined in the Bankruptcy Code, the term "disposable income[1]" is defined at § 1325(b)(2):

> For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2)(A); *In re McSparran*, 410 B.R. 664, 668 (Bankr. D.Mont. 2009); *In re Tuss*, 360 B.R. 684, 691 (Bankr. D.Mont. 2007); *In re Tranmer*, 355 B.R. 234, 241-42 (Bankr. D. Mont. 2006).

---

[1] The term "disposable income" was significantly changed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"). *Kagenveama*, 541 F.3d at 873 n.2.

In turn, the term "current monthly income," as used in § 1325(b)(2), is defined in the Bankruptcy Code as,

> (A) . . . the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
>
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>>
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A).

Courts disagreed on whether the term "projected disposable income" found in § 1325(b)(1)(B) was different from the term "disposable income" defined at § 1325(b)(2). Some courts adopted what has been referred to as the "mechanical approach," while others adopted what is known as the "forward-looking approach. Because of the conflict among the courts, in an eight to one decision, the United States Supreme Court granted certiorari, and in *Hamilton v. Lanning*, — U.S. —, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), adopted the "forward-looking approach," concluding that "when a bankruptcy court calculates a debtor's projected disposable

5

income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." 130 S.Ct. at 2478.

In *Hamilton v. Lanning*, the debtor proposed a 36-month plan that called for payments of $144 per month. 130 S.Ct. at 2470. The debtor's proposed plan was based on the debtor's Schedule I, which reported the debtor's actual income of $1,922 per month (which was below the applicable median), and Schedule J, on which the debtor reported her actual expenses of $1,772.97 per month. *Id*. The trustee objected to confirmation of the debtor's plan, arguing the debtor was not contributing all her projected disposable income to repayment of her creditors. *Id.* The trustee's objection was based upon the fact that within six months of filing her bankruptcy petition, the debtor "received a one-time buyout from her former employer." *Id.* Because of the one-time buyout, the debtor's actual income was considerably less than her historical income. "The Bankruptcy Court endorsed [the debtor]'s proposed monthly payment of $144 but required a 60-month plan period." *Id*. The Bankruptcy Appellate Panel for the Tenth Circuit, the United States Court of Appeals for the Tenth Circuit, and the Supreme Court of the United States affirmed the Bankruptcy Court's ruling.

The Supreme Court in *Hamilton v. Lanning*, focusing on the term "projected," reasoned that the ordinary meaning of projected supported a forward-looking approach because "in ordinary usage future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself." *Id*. at 2471. The Court also reasoned that Congress rarely used the term projected "to mean simple multiplication." *Id*. at 2472. Finally, the Court reasoned that "pre-BAPCPA case law points in favor of the 'forward-looking approach[,]" explaining,

> Prior to BAPCPA, the general rule was that courts would multiply a debtor's

6

>current monthly income by the number of months in the commitment period as the first step in determining projected disposable income. But courts also had discretion to account for known or virtually certain changes in the debtor's income.

*Id.*

Following the holding set forth in *Hamilton v. Lanning*, this Court agrees that Cassie's increased income, which was known at the time of confirmation, must be included in the calculation of Debtors' projected disposable income. However, *Hamilton v. Lanning* does not dictate that debtors calculate their projected disposable income using Form 22C when there are changes in income that are known or virtually certain to occur. Projected disposable income can still be determined by Schedules I and J.

Indeed, Cassie's increased income is reflected on Schedule I. The Trustee has not objected to any of the expenses listed on Debtors' Schedule J. Given the absence of any objection by the Trustee, the Court presumes Debtors' expenses are reasonable. Subtracting Debtors' monthly expenses from Debtors' combined average monthly income of $6,979.24[2], as shown on Schedule I, leaves Debtors' with monthly net income of $190.24.

The Trustee next objects to Debtors' applicable commitment period. The Trustee argues Debtors' applicable commitment period should be 60 months based upon Debtors' projected disposable income, which is above median. The Court disagrees.

For purposes of § 1325, when a plan does not propose to pay unsecured creditors in full, the term "applicable commitment period" is,

(i) 3 years; or

---

[2] On Form B 22C, Debtors' "current monthly income for § 1325(b)(3)" is listed as $5,360.96. *See* line 20.

> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
>
>> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>>
>> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>>
>> (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $675 per month for each individual in excess of 4[.]

The definition of "applicable commitment period" makes no reference to the term "projected disposable income" as discussed in *Hamilton v. Lanning, supra*. Rather, a debtor's "applicable commitment period" is determined by a simple mathematical formula. The definition is clear and unambiguous. Like § 1322(d), § 1325(b)(4) provides that a debtor's applicable commitment period is determined by multiplying a debtor's "currently monthly income" by 12 and then looking at whether the debtor's income is below or above specified state median family income thresholds. Unlike the term "projected disposable income," which is not defined in the Bankruptcy Code, the term "current monthly income" is defined and does not require or suggest a forward-looking approach.

Per Form 22C, Debtors' "annualized current monthly income for § 1325(b)(4)" is $64,331.52. At the time of the bankruptcy filing, the applicable median income for a family of four living in Montana was $70,469.00. Based upon such calculation, Debtors correctly determined that their applicable commitment period was 36 months. Debtors did not complete Part III of Form 22C. Debtors' Schedule I reflects Cassie's wage increase and shows a combined

8

average monthly income of $6,979.24. Debtors' Schedule J indicates Debtors' average monthly expenses total $6,789.00, leaving Debtors $190.24 with which to make their proposed Plan payments of $330.00.

Under the factual posture of this case, the Ninth Circuit Court of Appeals explained in *Kagenveama* that Debtor's Plan can only be confirmed if "the plan provides that all of the debtor's 'projected disposable income' received during the 'applicable commitment period' is applied to make payments under the plan." *Kagenveama*, 541 F.3d at 872. Debtors' plan satisfies the foregoing. For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Trustee's objections to confirmation of Debtors' Chapter 13 Plan dated October 24, 2012, are OVERRULED; and the Court will enter a separate order confirming Debtors' Chapter 13 Plan dated October 24, 2012.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana